UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

AMY SMITH, on behalf of M.H.,

                               Plaintiff,

                     V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                           Defendant.
───────────────────────────────────────

**REPORT AND
RECOMMENDATION**

09-CV-921
(GLS/VEB)

## I. INTRODUCTION

In September of 2005, Plaintiff Amy Smith filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act on behalf of her son, M.H. ("Claimant"), alleging disability based upon mental and physical impairments.[1]  The Commissioner of Social Security denied the application.

Plaintiff, through her attorneys, Olinsky & Shurtliff, Jaya Shurtliff, Esq., commenced this action on August 10, 2009, by filing a Complaint in the United States District Court for the Northern District of New York.  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On December 22, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

───────────────────────────

[1]Claimant is a minor.  Thus, in accordance with Rule 5.2 (a) of the Federal Rules of Civil Procedure, he will be referred to as "Claimant" in this Report and Recommendation.

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff is the mother of Claimant, a minor child.  On September 28, 2005, Plaintiff filed an application for SSI benefits on Claimant's behalf, alleging disability beginning on February 4, 2002. (T at 60-62).[2]  The application was denied initially.  Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  On August 6, 2008, a hearing was held before ALJ Dennis O'Leary.  (T at 329-53).  Plaintiff and Claimant appeared at the hearing, along with their attorney, and testified.

On September 4, 2008, ALJ O'Leary issued a written decision denying the application for benefits and finding that Claimant was not disabled within the meaning of the Social Security Act.  (T at 17-39).   The ALJ's decision became the Commissioner's final decision on June 17, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 5-8).

On August 10, 2009, Plaintiff, acting on Claimant's behalf, commenced this action by and through her attorneys, by filing a Complaint. (Docket No. 1).  The Commissioner interposed an Answer on January 13, 2010. (Docket No. 10).  Plaintiff filed a supporting Brief on March 3, 2010.  (Docket No. 11).  The Commissioner filed a Brief in opposition on May 17, 2010. (Docket No. 12).

Pursuant to General Order No. 18, as issued by the Chief District Judge of the Northern District of New York, this Court "will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ."

---

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8)

For the reasons set forth below, this Court recommends that the Commissioner's motion be denied, Plaintiff's motion be granted, and this case be remanded for the calculation of benefits.

## III. DISCUSSION

### A.   Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

3

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment that results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; Kittles v. Barnhart, 245 F.Supp.2d 479, 487-88 (E.D.N.Y.2003); Ramos v. Barnhart, 02 Civ.3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

4

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. 20 C .F.R. § 416.924(b); Kittles, 245 F.Supp.2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the claimant has not engaged in substantial gainful activity, the second step of the test requires an examination as to whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7.

If the existence of a severe impairment is discerned, the agency must then determine, at the third step, whether the impairment meets or equals a presumptively disabling condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listings"). Id. Equivalence to a listing can be either medical or functional. 20 C.F.R. § 416.924(d); Kittles, 245 F.Supp.2d at 488; Ramos, 2003 WL 21032012, at *7. If an impairment is found to meet or qualify as medically or functionally equivalent to a listed disability, and the twelve-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); Ramos, 2003 WL 21032012, at *8.

Analysis of functionality is informed by consideration of how a claimant functions in six main areas, commonly referred to as "domains." 20 C.F.R. § 416.926a(b)(1); Ramos, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those

5

domains include: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established in the event of a finding of an "extreme" limitation, meaning "more than marked," in a single domain. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I) (emphasis added).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); Ramos, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ noted that Claimant was born on March 21, 1997, and was thus a "school-age child" as defined pursuant to 20 CFR § 416.926a(g)(2) on the date the application for benefits was filed, and as of the date of the ALJ's decision.  The ALJ found that Claimant

had not engaged in substantial gainful activity at any time relevant to the decision. He further determined that Claimant suffered from the following severe combination of impairments: post-traumatic stress disorder associated with attention deficit hyperactivity disorder, combined type, and oppositional defiant disorder.  (T at 20).

However, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (the "Listings"). (T at 32).   The ALJ also concluded that Claimant does not have an impairment or combination of impairments that functionally equals one or more of the impairments set forth in the Listings. (T at 33).

As to the six domains of function: the ALJ determined that Claimant had: (1) less than marked limitation in acquiring and using information; (2) less than marked limitation with regard to attending and completing tasks; (3) marked limitation in interacting and relating to others; (4) no limitation in moving about and manipulating objects; (5) no limitation in the ability to care for himself; and (6) no limitation with regard to health and physical well-being. (T at 34-39).

In light of the foregoing, the ALJ found that Claimant had not been disabled, as defined under the Act, since the date the application for benefits was filed.  (T at 39).  As noted above, the ALJ's decision became the Commissioner's final decision on June 17, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 5-8).

### 2.    Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed.  In support of this position, she offers two (2) principal arguments.  First, Plaintiff contends that the ALJ erred by concluding that Claimant did not have a marked limitation with regard to the

domains of attending and completing tasks and caring for himself.  Second, Plaintiff argues that the ALJ did not properly evaluate her credibility with respect to her reports of Claimant's medical, psychological, and behavioral limitations.  Both arguments will be addressed in turn.

### a.    Attending to and Completing Tasks

In this domain, the Commissioner considers the claimant child's ability "to focus and maintain . . . attention," and how well he can "begin, carry through, and finish . . . activities, including the pace at which [he] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h).

A school-age child is expected to focus attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in work (beyond what would be expected in other children of like age who do not have impairments). The child should be able to change activities or routines without distracting himself/herself or others, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in group sports, read independently, and complete family chores. The child should also be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. 20 C.F.R. §416.926a (h)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she is easily startled, distracted, or overreactive to sounds, sights, movements, or touch; slow to focus on, or fails to

complete activities of interest; repeatedly becomes sidetracked from activities or frequently interrupts others; becomes easily frustrated and gives up on tasks; and requires extra supervision to remain engaged in an activity. 20 C.F.R. §416.926a (h)(3).

Plaintiff contends that Claimant has a marked limitation as to this domain. Plaintiff points to a teacher/school questionnaire completed in July of 2008 by Mary Hirsch, Claimant's special education teacher. Ms. Hirsch noted that Claimant was in a 6:1:1 "self contained class for severally emotionally disturbed" students. (T at 289). When asked to describe Claimant's problems functioning in the domain of attending to and completing tasks, Ms. Hirsch indicated several "very serious" problems occurring on an hourly basis during the course of a school day. (T at 291). Specifically, she assessed a very serious problem with regard to focusing long enough to finish assigned activity or task, carrying out multi-step instructions, completing work accurately without careless mistakes, and working without distracting self or others. (T at 291). Ms. Hirsch noted "serious" problems with respect to refocusing to task when necessary, waiting to take turns, changing from one activity to another without being disruptive, and working at a reasonable pace/finishing on time. (T at 291).

A June 2004 report from Oswego County BOCES indicated that Claimant had difficulties "following rules and working on any task" and needed "constant supervision to attend special areas, manage his behavior, and accomplish academic work." (T at 119). A psychological evaluation completed in March of 2004 by Ellen Van Vliet, a school psychologist, described Claimant as having hyperactivity, aggression, attention and conduct problems in the 99th percentile, with learning problems in the 98th percentile. (T at 124). Dr. Van Vliet indicated that Claimant was "highly distractable throughout the

evaluation and required constant redirection to remain focused on tasks." (T at 126). Claimant's attention span was described as "limited." (T at 126).  Dr. Van Vliet noted several concerns regarding Claimant, including "inattention" and "distractibility." (T at 127).

In a July 2005 treatment note, Dr. Vilas Patil, Claimant's treating physician, described Claimant as "extremely" hyperactive and "unable to sit still." (T at 198).  Dr. Mooney, Claimant's treating psychologist, noted in November of 2005 that Claimant demonstrated "limited ability to focus on one particular task and see it through to completion." (T at 191).  A December 2006 treatment note from Dr. Patil described Claimant as "hyperactive, restless, unable to sit still" and showing symptoms of "inattention, impulsivity, [and] hyperactivity." (T at 253).

The ALJ concluded that Claimant had less than marked limitation in the domain of attending and completing tasks. (T at 35).  In support of this finding, the ALJ opined that while "the record reveals that the claimant is easily distracted, has a short attention span and needs frequent encouragement to stay on tasks, there is nothing in the record to indicate that he has a marked limitation in this areas [*sic*] to establish that he cannot stay on task." (T at 35).  This Court finds that the ALJ's assessment is clearly not supported by substantial evidence and cannot be sustained.

The ALJ noted that Plaintiff's behavior had improved with medical intervention, psychotherapy, and support at school. (T at 35).  This is generally consistent with the record, which did demonstrate some improvement. (T at 248, 256, 259, 270, 280). However, the ALJ's statement that "there is nothing in the record to indicate" a marked limitation in this domain is flatly contradicted by Ms. Hirsch's questionnaire, completed less than two months before the ALJ rendered his decision. Ms. Hirsch outlined a series of "very

10

serious," "serious," and "obvious" problems, occurring on an hourly basis, with regard to attending and completing tasks.  (T at 291).  Other than a passing reference to this questionnaire in his general discussion of the factual record (T at 31), the ALJ makes no mention of Ms. Hirsch's questionnaire and undertakes no effort to reconcile his findings with her assessment.  This is significant, as Ms. Hirsch has daily interaction with Claimant throughout the course of the school day and is presumably the person best positioned to assess his abilities in this domain.  Thus, not only is the ALJ's statement that "nothing in the record" indicates a marked limitation wrong, it is directly contradicted by highly probative evidence from the very time period at issue.  In addition, Ms. Hirsch's finding significantly undermines the ALJ's premise that Claimant's behavior had been improved by medication and psychotherapy to the point were it was no longer markedly limiting.

Moreover, Ms. Hirsch's assessment becomes even more significant when one considers that her findings were made with respect to Claimant's conduct in a highly restrictive educational setting.  Claimant's behaviors might reasonably be expected to be curtailed or reduced by the structured setting and individual attention provided in the 6:1:1 setting.

The "Commissioner's regulations require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." Smith v. Massanari, No. 00-CV-0402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar.

17, 2002) (citing 20 C.F.R. § 416.924c).[3]   In other words, the ALJ was obligated to consider

Claimant's level of functioning outside of his structured educational environment.  See id.;

see also Straw v. Apfel, No. 98 Civ. 5089, 2001 WL 406184, at *6 (S.D.N.Y. Apr. 20, 2001).


Upon proper consideration of the effects of the highly restrictive 6:1:1[4] educational

environment, it is quite possible that Claimant's limitations in this area are even greater

than the already-significant limitations assessed by his special education teacher.  Indeed,

Plaintiff's testimony described difficulties in this area, such as an inability to sit and

complete homework (T at 346).  There is no indication that the ALJ considered the effect

of the structured setting on Claimant's limitations in this domain and, as discussed above,

the ALJ did not even attempt to reconcile his conclusion of less than marked limitation with

Ms. Hirsch's assessment.   Accordingly, this Court finds that the ALJ's decision in this

regard was not supported by substantial evidence and cannot be sustained.

---

[3]Section 416.924a (b)(5)(iv)(C) of the Social Security Regulations provides that:

A structured or supportive setting may minimize signs and symptoms of your impairment(s) and help to improve your functioning while you are in it, but your signs, symptoms, and functional limitations may worsen outside this type of setting. Therefore, we will consider your need for a structured setting and the degree of limitation in functioning you have or would have outside the structured setting. Even if you are able to function adequately in the structured or supportive setting, we must consider how you function in other settings and whether you would continue to function at an adequate level without the structured or supportive setting.

[4]The term "6:1:1" refers to the ratio of students/teacher/paraprofessional (i.e. aide). M.S. ex rel. M.S. v. New York City Dept. of Educ., 734 F. Supp.2d 271, 277 (E.D.N.Y. 2010).  Under the applicable New York regulations, such a setting is designed for students "whose management needs are determined to be highly intensive, and requiring a high degree of individualized attention and intervention."  8 NY ADC § 200.6 (emphasis added).

12

### b.    Caring for Self

In this domain, the Commissioner considers the child's ability to "maintain a healthy emotional and physical state, including how well [he or she] gets physical and emotional wants and needs met in appropriate ways; copes with stress and changes in environment; and whether the child can take care of his or her own health, possessions, and living area. 20 C.F.R. § 416.926a(k).

With regard to this domain, a school-age child is expected to be independent in most day-to-day activities (*e.g.*, dressing, bathing), although the child may still need to be reminded sometimes to do these routinely. The child should begin to recognize that he or she is competent in doing some activities and has difficulty with others. The child should begin to develop an understanding of right and wrong, and what is acceptable and unacceptable behavior. He or she should begin to demonstrate consistent control over behavior, and avoid behaviors that are unsafe or otherwise not beneficial. 20 C.F.R. § 416.926a(k)(2)(iv).

The Regulations provide examples of limited functioning with respect to this domain. For example, a child might have limited functioning if he or she continues to place non-nutritive or inedible objects in his or her mouth, often uses self-soothing activities showing developmental regression or has restrictive or stereotyped mannerisms, does not dress or bathe themself age appropriately; engages in self-injurious behavior or ignores safety rules, does not spontaneously pursue enjoyable activities or interests, and/or has a disturbance in eating or sleeping patterns.  20 C.F.R. §416.926a (k)(3).

The ALJ found that Claimant had "no limitations" with regard to this domain.  The ALJ did not offer any rationale for this decision. (T at 38).  For the following reasons, the

ALJ's unsupported conclusion with respect to this domain likewise cannot be sustained. A November 2004 progress note from Dr. Mooney, a treating psychologist, noted that Claimant had a history of setting fires and burning things. (T at 215).  A November 2005 treatment note indicated that Claimant had a history of self-injurious behavior, including "scratching and cutting his arms." (T at 227).

Ms. Hirsch, Claimant's special education teacher, opined that Claimant had several "very serious" and "serious" problems with regard to this domain.  Specifically, she indicated that Claimant had a "very serious" problem handling frustration appropriately and using good judgment regarding personal safety and dangerous circumstances. (T at 294). Ms. Hirsch assessed a "serious" problem in terms of being patient when necessary, identifying and appropriately asserting emotional needs, responding appropriately to changes in his own mood, using appropriate coping skills to meet daily demands of the school environment, and knowing when to ask for help. (T at 294).  Again, these findings become even more significant when one considers that these difficulties were present even while Claimant was in the highly structured setting provided by the 6:1:1 classroom.

Plaintiff testified that Claimant has a history of throwing objects and punching teachers at school. (T at 336).  She testified that she signed Claimant up for a Tae Kwon Do class, but he was asked not to return after kicking the instructor in the groin at the third lesson. (T at 337).  Plaintiff stated that Claimant had recently been taking knives and trying to cut his wrist. (T at 337).  She testified that she does not leave Claimant alone for more than a few minutes for fear that he will hurt himself. (T at 338).  Plaintiff stated that Claimant expresses anger by banging his head into walls, punching walls, throwing toys, and ripping his mattress. (T at 338).  When he was six years old, Claimant tried to set fire to his

mattress. (T at 340).

As outlined above, the ALJ did not offer any rationale at all in support of his finding that Claimant had "no limitation" with regard to this domain, let alone a rationale sufficient to justify a finding of *no limitation* in light of the evidence outlined above.  Accordingly, the ALJ's finding with regard to this domain cannot be sustained.

### c.   Credibility Assessment

Subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the claimant's credibility, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the

claimant's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the claimant's credibility:

1.  [Claimant's] daily activities;
2.  The location, duration, frequency and intensity of [Claimant's] pain or other symptoms;
3.  Precipitating and aggravating factors;
4.  The type, dosage, effectiveness, and side effects of any medication [Claimant] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.  Treatment, other than medication [Claimant] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.  Any measure [Claimant] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.  Other factors concerning [Claimant's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the claimant's contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, as outlined above, Plaintiff, Claimant's mother, who served as a *de facto* surrogate witness by testifying about Claimant's conditions, described a series of behaviors indicating very serious limitations.  For example, Plaintiff testified that Claimant pushed a girl down the stairs at school, breaking her arm. (T at 336).  He attempted to cut his wrist using household knives and tried to set fire to his mattress. (T at 337, 340). Plaintiff testified that Claimant punches and kicks her when she tries to enforce discipline. (T at 339-40).  Claimant is cruel to animals and displays frequent outbursts of temper. (T at 340-41).

16

The ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of Claimant's symptoms were not credible to the extent they were inconsistent with the ALJ's overall findings. (T at 33).  The ALJ did not offer any specific supporting rationale for this conclusion.  In particular, he made no attempt to reconcile his conclusion with the fact that Plaintiff's testimony was and is consistent with many of the limitations noted by Ms. Hirsch, Claimant's special education teacher.  For example, Ms. Hirsch indicated that Claimant had a "very serious" problem expressing anger appropriately and noted that he becomes verbally and physically aggressive when angry. (T at 292).

As noted above, when discounting credibility, the ALJ is obliged to do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief."  Young, 2008 WL 4518992, at *11.  In this case, the ALJ's summary assessment of Plaintiff's testimony, which testimony was consistent with findings made by Claimant's special education teacher, did not remotely satisfy this standard.

### 3.    Remand for Calculation of Benefits

In this Circuit, a court may remand solely for calculation of benefits when it finds there is "no apparent basis to conclude that a more complete record might support the Commissioner's decision." Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir.2004) (quoting Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir.1999)); see also Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) (remand for calculation of benefits appropriate where record "compel[s] but one conclusion under the ... substantial evidence standard."); Parker v. Harris, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of benefits

appropriate where "the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

For the reasons stated above, this Court finds that the record contains persuasive proof of Claimant's marked limitation of functioning in at least two of the domains identified under 20 C.F.R. § 416.926a.  To wit, the ALJ found a marked limitation with regard to interacting and relating to others. (T at 36).  In addition, the evidence outlined above constitutes substantial and compelling evidence of a marked limitation in terms of both the attending to and completing tasks domain and the caring for self domain.

Plaintiff's application for benefits on behalf of Claimant has been pending for more than five (5) years.  Delay "is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance for the child." Nieves ex rel. Nieves v. Barnhart, No. 02 Civ.9207, 2004 WL 2569488, at *10 (S.D.N.Y. November 12, 2004) (citing Maldonado v. Apfel, 55 F.Supp.2d 296, 297-98 (S.D.N.Y.1999)).  In fact, "[t]he purpose of providing SSI benefits to children is to assist them while they are children." Molina v. Barnhart, No. 00 CIV. 9522, 2002 WL 377529, at *10 (S.D.N.Y. March 11, 2002).

This Court concludes that remand to the Commissioner for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay.  Accordingly, it is recommended that a remand be ordered solely for the calculation of benefits.


**IV. CONCLUSION**

18

For the foregoing reasons, it is respectfully recommended that Plaintiff's Motion for Judgment on the Pleadings be GRANTED, that the Commissioner's Motion for Judgment on the Pleadings be DENIED, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner for calculation of benefits.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 7, 2011

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the**

19

Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 7, 2011

Victor E. Bianchini
United States Magistrate Judge

20